## A89A0360. SUN INSURANCE SERVICES, INC. v. 260 PEACHTREE STREET, INC.
(385 SE2d 127)

Pope, Judge.

At issue in this appeal is whether a long-term commercial tenant in an office building seeking to renovate its space should bear the cost of asbestos removal necessitated by the renovation or whether such cost should be borne by the landlord.

Appellant, Sun Insurance Services, Inc. (Sun Insurance) is the successor in interest to Coastal States Life Insurance Company on a lease for office space in an office building located at 260 Peachtree Street in Atlanta owned by appellee, 260 Peachtree Street, Inc. (260 Peachtree). The lease commenced in 1970 for a term of 25 years with an option to renew for another 10 years. Sun Insurance leases 12-½ floors, or approximately half of the building. The issue of asbestos removal arose when Sun Insurance sought written consent from 260 Peachtree to make renovations to the leasehold as required by Article XIII of the lease which reads in pertinent part: "Lessee shall make no repairs, additions or improvements to Premises without first obtaining Lessor's written consent, and such repairs, additions or improvements shall be equal in quality to the original condition of the Premises."

260 Peachtree, as lessor, gave its consent but conditioned it upon Sun Insurance paying the cost of asbestos removal that would become necessary by virtue of the renovation. Sun Insurance refused to pay and brought this declaratory action. The trial court granted 260 Peachtree's motion for summary judgment and denied Sun Insurance's. *Held*:

1. Sun Insurance's motion to enlarge the record is denied.

2. Resolution of this appeal requires a balancing of the interests of Sun Insurance in maximizing the use of its office leasehold with the interests of 260 Peachtree in maximizing its capital asset, the value of the office building. We must first determine whether 260 Peachtree has the absolute right to refuse consent for renovations. 260 Peachtree argues that it does and points to the case of *Nguyen v. Manley*, 185 Ga. App. 187 (363 SE2d 613) (1987), as support. In *Nguyen*, the lease provided that " '(t)enant shall not . . . make any structural alterations, additions or improvements to the demised premises without prior written consent of landlord.' " Id. at 187. The court construed this language to be unambiguous and declined to impose a requirement of reasonableness on consent where the lease did not so provide. We find *Nguyen* to be inapposite in this case. In the lease before us, the consent provision reads "Lessee shall make no repairs, additions or improvements to Premises without first obtaining Lessor's written consent, *and* such repairs, additions or improvements shall be equal

in quality to the original condition of the Premises." (Emphasis supplied.) The coupling of the second clause to the first impliedly creates a standard of reasonableness to be applied to the issue of consent. The intent of the parties was to protect the value of the landlord's asset, the building. If the landlord reserved the absolute right to refuse consent, the clause pertaining to equal quality would be mere surplusage.

We find the situation in the present case analogous to that in *Mendel v. Pinkard*, 108 Ga. App. 128 (1) (132 SE2d 217) (1963). There, the court construed a long-term lease that allowed the lessee to make any repairs or improvements it wished, but required prior notice to the landlord and the posting of a bond. The lease also required that any changes be of equal value to the original premises. If the covenants of the lease were breached by the lessee, the lease would become null and void. In *Mendel*, the court found that the lessee had made many extensive improvements without providing notice or bond, but declined to enforce the forfeiture clause because it found that the intent of the parties was to insure that the landlord's property was of equal or greater value at the end of the lease term, and the evidence showed this to be the case. Thus, we find that the lease in the present case does carry an implied requirement that the landlord not refuse consent to changes that are of equal or greater quality than the original condition of the premises.

"The commonly accepted requirement in a leasehold contemplates that the lessor (owner) will make capital improvements or repairs as opposed to repairs or modification essentially beneficial to the lessee. [Cit.] The logic of this is apparent as capital improvements or repairs normally work to the advantage of the owner and not to the lessee who normally enjoys only a usufruct." *Jacobi v. Timmers Chevrolet*, 164 Ga. App. 198, 199 (296 SE2d 777) (1982). "[W]here improvements of a structural nature outside the contemplation of the parties [become] necessary, in the face of covenants by both parties as to just what repairs they would make . . . it would be more equitable and just to require of the landlord the making of substantial improvements which necessarily [enhance] the value of the property." *Midtown Chain Hotels Co. v. Bender*, 77 Ga. App. 723, 730 (49 SE2d 779) (1948).

The lease in this case requires 260 Peachtree to keep the building in "good order, safe condition and repair." The asbestos that must be removed is fireproofing material sprayed directly onto structural beams and decking. As stated by Sun Insurance in its brief, the question is "not whether the Building is 'safe' if no renovation occurs; rather, the issue is whether the Building is in a 'safe condition' for purposes of allowing [Sun Insurance] to make improvements as contemplated in the lease."

The changes sought by Sun Insurance are necessary to increase the efficiency of its business. Such changes were contemplated by the parties in the lease. While removal of the asbestos will be a cost to 260 Peachtree, the record shows that it will certainly enhance the value of its building. By construing the terms of the lease and following the authorities cited, we find that 260 Peachtree refused consent to the renovations unreasonably and that it should bear the cost of asbestos removal made necessary by the renovations Sun Insurance seeks. Accordingly, we find that the trial court erred in granting 260 Peachtree's motion for summary judgment and in refusing to grant Sun Insurance's motion for summary judgment.

*Judgment reversed. Banke, P. J., and Sognier, J., concur.*

DECIDED JULY 13, 1989 —
REHEARING DENIED JULY 26, 1989 —

*Arnall, Golden & Gregory, William H. Kitchens, Robert L. Rothman, Ellis G. Arnall*, for appellant.

*O'Callaghan, Saunders & Stumm, Rex M. Lamb III, Barbara J. Lukes*, for appellee.